**F.F.P. OPERATING PARTNERS, L.P., d/b/a Mr. Cut Rate # 602, Appellant,**

v.

**Xavier DUENEZ, and Wife Irene Duenez, individually, and as Next Friends of A.D., C.D., and P.D., Minors, Appellees.**

**No. 13–00–466–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 14, 2002.

Rehearing Overruled March 14, 2002.

---

Reagan Wm. Simpson, Fulbright & Jaworski, Houston, Mike A. Hatchell, Hatchell P.C., Tyler, Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Spencer G. Markle, Houston, for Appellant.

John W. Griffin, Jr., David C. Griffin, Robert P. Houston, Houston, Marek & Griffin, Victoria, Christa L. Brown, Austin, Cynthia T. Sheppard, Cuero, for Appellees.

David Roberts, Wanda Roberts, Garner, Roberts & Roberts, Port Lavaca, Attorneys Ad Litem.

Glen Garey, Austin, Oscar Herman Villarreal, Villarreal, Moreno & Ruiz, San Antonio, for Amicus Curiae.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice YAÑEZ.

Appellant, F.F.P. Operating Partners (FFP), appeals a judgment rendered in favor of appellees, Xavier and Ashley Duenez. We affirm.

## Background

In the late afternoon of July 26, 1997, Roberto Ruiz bought a twelve-pack of beer at a "Mr. Cut Rate" convenience store owned by FFP. During the afternoon, prior to purchasing the twelve-pack at FFP's store, Ruiz had drank a case and a half of beer while cutting firewood. After leaving FFP's store, Ruiz swerved into the opposing lane of traffic, colliding with the Duenez family's car. All five members of the Duenez family were injured, with Xavier and his daughter, Ashley, suffering the greatest injuries.[1]

Ruiz was arrested at the scene of the accident and ultimately pleaded guilty to intoxication assault and was sent to prison.[2] The Duenezes brought suit against Ruiz, FFP, Carol Solis,[3] Nu–Way Beverage Company, and the owner of the land where Ruiz had spent the afternoon cutting firewood and drinking. Prior to trial, the Duenezes non-suited the landowner, Ruiz, Nu–Way Beverage Company, and Carol Solis, leaving FFP as the only defendant at trial.

FFP attempted to have the court's charge to the jury include a question apportioning responsibility between Ruiz and FFP; however, the trial court refused to include such a question. The jury found that when the alcohol was sold to Ruiz, it was "apparent to the seller that he was obviously intoxicated to the extent that he presented a clear danger to himself and others," and his intoxication was a proxi-

1. Ashley Duenez, who was nine years old at the time of the accident, suffered a lacerated spleen and a traumatic brain injury, which has left her so seriously impaired that she will require constant care and monitoring for the remainder of her life. Xavier Duenez suffered a multiple fracture of one arm and serious head injuries that required hospitalization. One of the two sons received an injury which resulted in a scar across his forehead.

2. A breathalyzer test given Ruiz over two hours after the accident revealed a blood-alcohol concentration of .157.

3. Solis was the clerk at the Mr. Cut Rate store who sold Ruiz the twelve-pack.

mate cause of the collision. The trial court rendered judgment for the Duenezes in excess of $35,000,000.00 plus costs and pre-judgment interest.

FFP raises four issues on appeal, contending that the trial court erred by: (1) granting a partial summary judgment in which the trial court held that the "proportionate responsibility statute does not apply in a dram shop case when the drunk driver is not the plaintiff;" (2) severing a cross-action filed by FFP against Ruiz for contribution and as a responsible third party; (3) refusing to submit a question to determine Ruiz's negligence and percentage responsibility; and (4) refusing to submit an instruction on sole proximate cause.

### Proportionate Responsibility and the Dram Shop Act

FFP's first three issues all require an examination of the relation of the Dram Shop Act[4] to the apportionment of liability in a situation where the alcohol provider seeks to apportion liability between itself and the intoxicated driver. This requires an examination of the Dram Shop Act and its relationship to the provisions of the Texas Civil Practice and Remedies Code governing apportionment of responsibility.

Under the Dram Shop Act:

providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action ... upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and

(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV.CODE ANN. § 2.02(b) (Vernon 1995).

Chapter 33 of the Texas Civil Practice and Remedies Code governs the apportionment of responsibility in tort cases. TEX. CIV. PRAC. & REM.CODE ANN. § 33.002(a) (Vernon 1997). Under chapter 33, a plaintiff "may not recover damages if his percentage of responsibility is greater than 50 percent." TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). Chapter 33 also mandates that, as to each cause of action, the trier of fact shall determine the percentage of responsibility for the harm for which recovery of damages is sought of each claimant, each defendant, each settling person, and each responsible third party who is joined under section 33.004. TEX. CIV. PRAC. & REM.CODE ANN. § 33.003 (Vernon 1997).

The case now before this Court involves a third-party claim against FFP: the Duenezes sued FFP for damage caused by another individual. FFP argues that chapter 33 of the Texas Civil Practice and Remedies Code applies to third-party

---

4. In 1987, the Texas Legislature passed chapter 2 of the Alcoholic Beverage Code. TEX. ALCO. BEV.CODE ANN. §§ 2.01–2.03 (Vernon 1995). This is commonly known as the "Dram Shop Act." *Borneman v. Steak & Ale of Texas, Inc.* 22 S.W.3d 411, 412 (Tex.2000). Eight days prior to the enactment of the Dram Shop Act, the supreme court recognized a cause of action against an alcoholic beverage licensee who serves alcoholic beverages to a person when the licensee knows or should know that the patron is drunk. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987). The Dram Shop Act specifically states that the statutory remedy available under the Act is in lieu of any common law "warranties or duties." TEX. ALCO. BEV.CODE ANN. § 2.03 (Vernon 1995). Thus, the liability of providers for the actions of their intoxicated customers is now governed by the Dram Shop Act, and not common law. *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex.1993).

Dram Shop claims. This question has not been addressed by the Texas Supreme Court; however, the supreme court has addressed the question of the applicability of the proportionate responsibility statute in *first-party* actions, when the plaintiff in the lawsuit is also the intoxicated person. *Smith v. Sewell*, 858 S.W.2d 350, 356 (Tex. 1993). FFP relies on the holding in *Sewell* to support its argument that chapter 33 applies to third-party Dram Shop Act claims, such as the case now under consideration.

In *Smith v. Sewell*, the plaintiff sued the owner of a bar after the plaintiff became intoxicated at the bar, then was involved in an auto accident. *Id.* at 351. The trial court granted summary judgment for the bar owner on the ground that an individual who is provided, sold, or served alcoholic beverages in violation of the Dram Shop Act, and injures himself may not assert a cause of action against the provider. *Id.* at 352. The Dallas Court of Appeals reversed the trial court, holding that the Dram Shop Act allowed first party actions against providers. *Sewell v. Smith*, 819 S.W.2d 565, 568 (Tex.App.—Dallas 1991) *aff'd*, 858 S.W.2d 350 (Tex.1993). The Texas Supreme Court affirmed the decision of the court of appeals. *Sewell*, 858 S.W.2d at 356. The plaintiff argued before the supreme court that chapter 33 was "not applicable to an intoxicated individual's recovery under [the Dram Shop Act]." *Id.* at 355. The supreme court disagreed, holding that "under the limited circumstances present in this cause" chapter 33 applies to actions brought under the Dram Shop Act; thus, an intoxicated person suing a provider for his own injuries under the Dram Shop Act will not be entitled to recover damages if his percentage of responsibility is greater than fifty percent, and the intoxicated person's recovery will be adjusted according to his own percent-

age of responsibility. *Id.* at 356. The court stated:

[the Dram Shop Act] is intended to deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public. *But when it is the intoxicated individual who is injured due to his own intoxication, it is particularly appropriate that his conduct in contributing to his injury should be considered in assessing the amount of recovery, if any, to which he is entitled.* Application of the principles of comparative responsibility to causes of action brought under [the Dram Shop Act] establishes a consistent and equitable approach to the issue of "dramshop liability" generally, and first party "dramshop liability" specifically. This approach provides an effective solution to a difficult and controversial issue.

*Id.* (emphasis added).

■ In the case now before this Court, the Duenezes argue that the Dram Shop Act imposes vicarious liability upon providers for the actions of the intoxicated person in an action filed by a non-negligent third party. FFP argues that the holding in *Sewell* precludes a finding of vicarious liability and further requires that FFP's liability be offset by Ruiz's liability. We hold that, in third-party actions under the Dram Shop Act in which there are no allegations of negligence on the part of the plaintiffs, a provider is vicariously liable for the damages caused by an intoxicated person, and such a provider is not entitled to offset its liability by that of the intoxicated person.

■ This holding is consistent with the wording of the Dram Shop Act. The conduct by which a provider incurs liability for damages caused by an intoxicated per-

son is the provision of alcohol to a person who is obviously intoxicated to the point that he presents a clear danger to himself or others. TEX. ALCO. BEV.CODE ANN. § 2.02(b)(1) (Vernon 1995). The law does not require that the provider engage in any conduct that results in the actual injuries suffered, but rather imposes liability on the provider for the actions of the intoxicated person. *See Borneman v. Steak & Ale of Texas, Inc.*, 22 S.W.3d 411, 413 (Tex.2000) (considering acts or omissions, other than the provision of alcohol to intoxicated person, would directly contravene legislative decision to define dram shop liability in reference to patron's intoxication). When a provider sells, serves, or provides an alcoholic beverage to an intoxicated person, that provider becomes liable for any harm caused by the intoxicated person, as a result of his intoxication, just as an employer is liable for the damages caused by an employee in the course and scope of the employment.

 Vicarious liability imposes liability on one party for the actionable conduct of another party. *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177 (Tex.App.— Amarillo 1997, writ denied); BLACK'S LAW DICTIONARY 927 (7th ed. 1999). Under the theory of vicarious liability, the actionable conduct of a tortfeasor is deemed to be that of the vicariously liable party. *See, e.g., GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex.1999) (actions of a corporate officer are deemed to be the actions of the corporation itself); *DeWitt v.*

*Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) (*respondeat superior* imposes liability on the employer for the acts of his employee). Thus, it follows that a vicariously liable party cannot offset its liability by that of the tortfeasor, because the responsibility of the tortfeasor is imputed to the vicariously liable party. When a party is vicariously liable for the conduct of another party, a division of liability would be meaningless: the vicariously liable party is liable for the other party's actions, as though those actions were its own.

 Vicarious liability becomes problematic in first-party lawsuits. Allowing a tortfeasor who has been injured as a result of his own intoxication to sue the provider, and then imposing vicarious liability upon the provider would allow the tortfeasor to recover totally from another party for the tortfeasor's own conduct. The supreme court avoided this unpalatable result in *Sewell* by applying the principles of proportionate responsibility contained in chapter 33. *Sewell*, 858 S.W.2d at 356. However, the court stressed that this holding was limited to the circumstances of that case. *Id.* Because the case now before this Court is not a first-party action, it is not subject to the holding in *Smith v. Sewell.*[5] Because the instant case is a third-party action under the Dram Shop Act, and there are no allegations that the plaintiff was negligent, FFP is vicariously liable for the damages Ruiz caused, and is not entitled to offset its liability by Ruiz's percentage of liability.[6]

5. Our holding today does not completely preclude the application of chapter 33 in third-party Dram Shop claims. A claimant in a Dram Shop case remains subject to the fifty percent bar contained in chapter 33. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). However, that bar would not be applicable in the instant case, because there are no claims made that the Duenezes were negligent. We also do not address the applicabili-

ty of chapter 33 in situations in which there are more than one provider possibly responsible, because in the case now before us, there is only one provider involved.

6. We note that the Dram Shop Act created a "safe harbor" for providers. A provider is not liable for the actions of employees who provide alcohol to intoxicated persons if: (1) the provider requires employees to attend a

## The Summary Judgment

In its first issue on appeal, FFP argues that the trial court erred in granting the plaintiffs' motion for partial summary judgment which was based on the ground that the proportionate responsibility statute does not apply in a dram shop case when the intoxicated driver is not the plaintiff. The sole argument raised in the Duenezes' motion for partial summary judgment was that the Dram Shop Act created vicarious liability for providers when an intoxicated person causes injuries to third parties and there are no allegations of fault on the part of the third party. Thus, the Duenezes contended, chapter 33 was not applicable to their suit against FFP.

This Court reviews a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Howard v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 216 (Tex. App.—Dallas 1996, writ denied). As discussed above, we hold that, in third-party actions under the Dram Shop Act, a provider is vicariously liable for damages caused by an intoxicated patron and because FFP did not allege that the Duenezes were negligent, chapter 33 is not applicable as a bar to recovery. FFP's first issue is overruled.

## FFP's Cross-action against Ruiz

FFP filed a cross-action against Ruiz, asserting a right to contribution and seeking to have Ruiz's responsibility apportioned by the trier of fact. The Duenezes filed a motion to sever FFP's contribution claim pursuant to Texas Rule of Civil Procedure 174(b), which the trial court granted. In its second issue, FFP now argues that the trial court erred in granting the severance.

 The severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex.1996). A trial court properly exercises its discretion in severing claims when: (1) the controversy involves more than one cause of action; (2) the severed claim is one that could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues. *Id.*

 We do not find that the trial court abused its discretion. FFP filed an action for contribution against Ruiz. A vicariously liable party's right of recovery against the tortfeasor is through indemnity rather than contribution. *St. Anthony's Hosp.*, 946 S.W.2d at 178. Therefore, FFP did not have a contribution claim against Ruiz.[7] An indemnity claim does not accrue

---

seller training program approved by the Texas Alcoholic Beverage Commission; (2) the employee has actually attended a training program; and (3) the provider did not encourage the employee to violate the Dram Shop Act. TEX ALCO. BEV.CODE ANN. § 106.14(a) (Vernon Supp.2001). This "safe harbor" is not available to providers who themselves violate the Dram Shop Act. *See id.*

7. FFP argues that it has a cause of action under the Dram Shop Act, pointing out that the Dram Shop Act states that it "does not affect the right of any person to bring a common law cause of action against any individu-

al whose consumption of an alcoholic beverage allegedly resulted in causing the *person bringing the suit to suffer personal injury or property damage."* TEX. ALCO. BEV.CODE ANN. § 2.02(a) (Vernon 1995) (emphasis added). In its brief, FFP argues that it is a person entitled to bring suit under this provision; however, there is no evidence in the record that FFP suffered personal injury or property damage, nor did FFP argue to the trial court that *it had suffered personal injury or proper*ty damage. Therefore, FFP is not entitled to bring suit against Ruiz under the Dram Shop Act.

until all of the potential liabilities of the indemnitee become fixed and certain. *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 210 (Tex.1999). The facts that entitle an indemnitee to seek indemnification through suit come into existence when the indemnitee's liabilities become fixed and certain by judgment. *Id.* FFP did not have an indemnity claim against Ruiz until the Duenezes' suit was concluded and a judgment taken against FFP. *See id.* The trial court did not err in severing out FFP's action for contribution.

■ FFP also argues that it had the statutory right to have Ruiz included as a responsible third party. A responsible third party is defined as a person over whom the trial court could exercise jurisdiction, who could have been, but was not, sued by the plaintiff, and who is, or may be, liable to the plaintiff for all of the damages claimed by the plaintiff. TEX. CIV. PRAC. & REM.CODE ANN. § 33.011(6)(a) (Vernon 1997). We do not find that Ruiz meets the definition of a responsible third party. FFP is vicariously liable for Ruiz's actions and thus stands in the same position in this case as Ruiz himself. FFP was exposed to liability for Ruiz's actions when it provided him with alcohol and from the time it provided Ruiz with alcohol, it is as though Ruiz's actions were undertaken by FFP. The Dram Shop Act imposes liability upon a provider when the intoxication of the recipient of the alcohol was the proximate cause of the damages. TEX. ALCO. BEV.CODE ANN. § 2.02 (Vernon 1995). Ruiz's intoxicated conduct exposed FFP to liability: for purposes of this action he was not a third party because his actions, and liability for those actions, are imputed to FFP.

The trial court did not err in severing FFP's action against Ruiz, nor did the trial court err by refusing to include Ruiz as a responsible third party. We overrule FFP's second issue.

## The Jury Charge

■ FFP's last two issues challenge the trial court's charge to the jury. In its third issue, FFP contends that the trial court erred by refusing to submit a question to the jury "to determine the drunk driver's negligence and percentage responsibility." The jury charge contains seven questions. Questions three through seven ask the jury to determine the damages suffered by each of the Duenezes. The first two questions track the language of the Dram Shop Act.[8] As a general rule, when a statutory cause of action is submitted, the charge should track the language of the statute as closely as possible. *Borneman*, 22 S.W.3d at 413 (citing *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994)). Because FFP is vicariously liable for the injuries caused by Ruiz's intoxication, apportioning liability would be meaningless: FFP is liable for any percentage of liability assigned to Ruiz, as well as any percentage assigned to FFP. The trial court did not err in refusing to charge the jury regarding Ruiz's percentage of liability. FFP's third issue is overruled.

■ In its final issue, FFP argues that the trial court erred by refusing to submit an instruction on sole proximate cause. FFP argues that the accident occurred when Ruiz diverted his attention from the road to reach under his seat for a compact disc and, therefore, FFP was entitled to an

---

8. Question one reads: "At the time the alcohol was sold to Roberto Ruiz, was it apparent to the seller that he was obviously intoxicated to the extent that he presented a clear danger to himself and others?" Question two reads: "Was Roberto Ruiz's intoxication a proximate cause of the collision in question?"

instruction on sole proximate cause. Essentially, FFP argues that testimony in the record would support a finding that Ruiz's inattentiveness, rather than his intoxication, was the sole proximate cause of the accident. However, FFP does not dispute that Ruiz was intoxicated, and in fact refers to Ruiz as "the drunk driver" throughout its brief.

 A trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997). When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Texas Workers' Compensation Ins. Fund v. Mandlbauer,* 34 S.W.3d 909, 912 (Tex.2000). A proper instruction must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *Id.*

FFP contends that there was testimony that would support a finding that Ruiz's negligence, not his intoxication, caused the collision with the Duenezes. FFP points to testimony by Ruiz that the accident happened because he reached for a compact disc, which was supported by statements by Ruiz's passengers that Ruiz was "fooling around with," "messing with," or "playing with" the compact disc player in the truck. FFP also refers to testimony by two police officers that driver inattention can cause accidents.

The problem with FFP's argument is that it requires a finding that an intoxicated person's inattentiveness is somehow separable from that intoxicated person's general state of intoxication. Common sense dictates that an intoxicated person's every act or omission is affected by that person's intoxication, and no one particular action of an intoxicated person is separate and unaffected by the inebriation that impairs the intoxicated person's judgment and behavior. FFP's proposed instruction would have required the jury to decide if Ruiz's reaching for a compact disc was distinguishable and separate from other actions undertaken in his intoxicated state. FFP argues that the jury could characterize some of Ruiz's actions as a product of intoxication, while characterizing others as merely negligent, although undertaken while Ruiz was intoxicated. Such a distinction cannot be made.[9] Ruiz's carelessness while looking for a compact disc is not an action separate and distinguishable from his intoxicated conduct. The trial court did not err in refusing a sole proximate cause instruction in this case. We overrule FFP's final issue.

### Conclusion

The Dram Shop Act imposes vicarious liability upon providers who violate the Act's provisions. Because the provider is vicariously liable for the actions of the intoxicated person, chapter 33 of the Texas Civil Practice and Remedies Code is not applicable to third-party actions under the Dram Shop Act when there are no allegations that the plaintiff was negligent. Finally, a defendant is not entitled to an instruction that would require a jury to distinguish the actions of an intoxicated person which are produced by intoxication and those which were merely negligent.

9. We note that there are no allegations that Ruiz acted in response to an intervening factor, such as other traffic or road conditions. We are not ruling on the question of whether a sole proximate cause instruction would be proper where an intoxicated driver is reacting to an external factor.

The judgment of the trial court is AFFIRMED.