IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0381

════════════

 

F.F.P. Operating Partners,
L.P., D/B/A Mr. Cut Rate #602, Petitioner,

 

v.

 

Xavier Duenez and Wife, Irene
Duenez, as Next Friends of Carlos Duenez and Pablo Duenez, Minors, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

 

Argued on November
30, 2005

 

Justice O’Neill, dissenting

The
proportionate-responsibility statute directs its application to all tort-based
causes of action. Tex. Civ. Prac. &
Rem. Code § 33.002. At the same time, the Dram Shop Act directs that
alcohol providers who serve customers so obviously intoxicated that they
present a clear danger to themselves and others are liable “for the actions of
their [intoxicated] customers . . . .” Tex.
Alco. Bev. Code § 2.03.[1] Over two years ago, this Court issued
an opinion giving effect to both statutes; when a customer who has been served
in violation of the Dram Shop Act injures an innocent third party, the
intoxicated customer’s percentage of responsibility must be apportioned so that
the provider may seek reimbursement from the customer, but the innocent third
party may recover from the provider “for the actions of [its] customer[].” Tex. Alco. Bev. Code § 2.03. Unlike
today’s decision, our holding honored both the statutory-apportionment
directive and the Dram Shop Act’s derivative-liability component. Rather than
reiterate the original opinion’s exhaustive analysis here, I attach the Court’s
decision as an appendix to this dissent. A few additional points, though, are
worthy of note. 

First,
between the time the Court issued its original decision in this case and the
date rehearing was granted, more than seven months passed and three members of
the former majority left the Court. The motion for rehearing raises no new
issues; every point was thoroughly considered by the Court in its prior
decision. While the motion for rehearing was pending, the Legislature convened
without taking any action to alter this Court’s original interpretation.
Nevertheless, the Court today withdraws the prior opinion, reaches the opposite
result, and accomplishes judicially what the Legislature itself declined to do.


More
substantively, while the Court parrots the statutory construction rule favoring
interpretations that harmonize different statutes, it makes no effort
whatsoever to reconcile the Dram Shop Act’s specific language with the more
general proportionate-responsibility statute, giving effect only to the latter.
The Court reasons that holding the dram shop liable for the actions of its
intoxicated customer could, in some cases, impose joint and several liability
on the dram shop if the jury found it less than fifty-one percent responsible,
which would be contrary to Chapter 33’s provisions. See ___ S.W.3d at
___ (citing Tex. Civ. Prac. & Rem.
Code § 33.013(a), (b)(1)). I believe this is precisely what the
Legislature intended if a provider serves alcohol in violation of the Dram Shop
Act. To avoid this potential result, the Court simply ignores the Dram Shop
Act’s derivative-liability component, i.e., the provider’s liability
“for the actions of [its] customers.” Tex.
Alco. Bev. Code § 2.03. By ignoring the very language that imbues the
Dram Shop Act with deterrent effect, the Court undermines the legislative
policy underlying the entire Alcoholic Beverage Code, which is to “protect[ ]
the welfare, health, peace, temperance, and safety of the people of the state,”
and to “liberally construe [the Code] to accomplish this purpose.” Tex. Alco. Bev. Code § 1.03. The Dram
Shop Act’s derivative-liability component, designed to deter providers from
selling alcohol to obviously intoxicated and clearly dangerous persons, can and
should be reconciled with the proportionate-responsibility statute rather than
selectively ignored. 

To
support its selective view, the Court today finds arguments convincing that the
prior Court did not. Specifically, the Court interprets section 2.03 of the
Dram Shop Act to signal nothing more than the exclusivity of the statutory
remedy, marginalizing the specific language used. But as the prior Court noted:

 

[i]f that had been
the statutory purpose, [the statute] would have simply said:

The liability of
providers under this chapter is in lieu of common law or other statutory law
warranties and duties of providers of alcoholic beverages.

 

Instead, section
2.03 clearly says:

 

[t]he liability of
providers under this chapter for the actions of their customers, members, or
guests who are or become intoxicated is in lieu of common law or other
statutory law warranties and duties of providers of alcoholic beverages.

 

Tex. Alco. Bev. Code § 2.03 (emphasis
added). ___ S.W.3d ___. The Court today also picks up the prior dissents’
refrain that the Legislature specifically carved out exceptions to the
proportionate-responsibility scheme for a number of criminal acts, like the
manufacture of methamphetamine, yet did not make exceptions for alcohol
providers. But the Dram Shop Act, with its express derivative-liability
component, came out of the same legislative session that enacted comparative
responsibility; being by its own terms a limited exception to comparative
responsibility, there was no need to create a separate one. Act of June 1,
1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended
2003) (current version at Tex. Alco.
Bev. Code § 2.03); Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §
2.06, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code
§ 33.003). 

In
sum, the disagreement in this case is, and has always been, over what the
Legislature meant in the Dram Shop Act when it referred to “the liability of
providers under this chapter for the actions of their customers . . . who are
or become intoxicated.” Tex. Alco.
Bev. Code § 2.03. Over two years ago, the Court considered this language
significant and straightforward, and afforded the Legislature deference in
choosing it. No new arguments have been raised on rehearing, and the
Legislature has proposed no new legislation in light of our prior interpretation.
Today the Court usurps the legislative function and dilutes the deterrent
protections the Dram Shop Act was designed to afford. For the reasons expressed
in the original Court’s opinion, I would affirm the court of appeals’ judgment.


 

 

 

__________________________________________

Harriet O’Neill

Justice

 

 

OPINION DELIVERED: November 3,
2006.

 

 

 

 

 

APPENDIX

 

 

IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0381

════════════

 

F.F.P. Operating Partners, L.P.,
d/b/a Mr. Cut Rate #602, Petitioner

 

v.

 

Xavier Dueñez and Wife, Irene
Dueñez, Individually and as Next Friends of Ashley Dueñez, Carlos Dueñez, and
Pablo Dueñez, Minors, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

Argued on March 5,
2003 

 

Justice O’Neill delivered the opinion
of the Court, in which Chief Justice
Phillips, Justice Jefferson,
Justice Schneider, and Justice Smith joined.

 

Justice Owen filed a dissenting
opinion, in which Justice Hecht, Justice Wainwright, and Justice Brister joined.

 

 

The
plaintiffs in this dram-shop case were injured when their car was struck
head-on by an intoxicated driver who had purchased alcohol from a convenience
store that the defendant owned. The trial court refused to submit the
intoxicated driver’s percentage of responsibility to the jury for
apportionment, as we required in Smith v. Sewell, 858 S.W.2d 350, 356
(Tex. 1993) when the intoxicated driver sued his provider for his own injuries.
Instead, the trial court severed the provider’s cross-action against the driver
and rendered judgment on the jury’s verdict against the provider. The court of
appeals affirmed, holding that the proportionate responsibility statute does
not apply when the injured plaintiff is an innocent third party. 69 S.W.3d 800.
We hold that the proportionate responsibility statute applies to all Dram Shop
Act claims, including the type at issue here. We conclude, however, that the
judgment was correct because the provider is responsible to the innocent
third-party plaintiffs for its own liability and that of its intoxicated
patron, from whom it seeks recovery in the cross-action. We also conclude that,
although the trial court should have submitted the intoxicated patron’s
percentage of responsibility to the jury for apportionment, its order severing
the provider’s cross-action against the intoxicated driver did not amount to
reversible error. Finally, we hold that the trial court did not err in refusing
to submit an instruction on sole proximate cause to the jury. Accordingly, we
affirm the court of appeals’ judgment, although on different grounds.

 I


After
consuming a case-and-a-half of beer, Roberto Ruiz drove his truck to a Mr. Cut
Rate convenience store owned by F.F.P. Operating Partners, L.P., and purchased
a twelve-pack of beer. The store’s assistant manager, Carol Solis, sold the
beer to Ruiz. Ruiz then got into his truck, opened a can of beer, and put the
open beer can between his legs.[2] [footnote 1 in original opinion]

Ruiz
then drove onto a nearby highway, and several times swerved into oncoming
traffic. Two cars had to dodge his truck to avoid a collision. As he crossed a
bridge less than a mile from the convenience store, Ruiz swerved across the
center line and hit the Dueñezes’ car head-on. At the time of the collision,
Ruiz had lowered his head below his truck’s dashboard as he tried to reach
beneath his seat to retrieve a compact disc. 

All
five members of the Dueñez family suffered some injury. Nine-year-old Ashley
was the most seriously hurt. She suffered a traumatic brain injury, and will
require round-the-clock care for the rest of her life. Xavier Dueñez, a
corrections officer, also suffered some degree of permanent brain damage. 

Ruiz
was arrested at the accident scene for drunk driving. He pleaded guilty to
intoxication assault and was sentenced to prison. The Dueñezes initially sued
F.F.P., Ruiz, Solis, Nu-Way Beverage Company, and the owner of the land where
Ruiz had spent the afternoon cutting firewood and drinking. F.F.P. named Ruiz a
responsible third party and filed a cross-action against him. F.F.P. named no
other persons or entities as responsible for the accident. The Dueñezes
thereafter nonsuited all defendants except F.F.P.

At
the pretrial conference, the Dueñezes obtained a partial summary judgment that
Texas Civil Practice and Remedies Code Chapter 33’s proportionate
responsibility provisions did not apply to this type of case. The trial court
then severed F.F.P.’s cross-action against Ruiz, leaving F.F.P. as the only
defendant for trial. The severed action remains pending in the trial court. 

At
trial, F.F.P. requested a jury instruction that “if an act or omission of any
person not a party to the suit was the ‘sole proximate cause’ of an occurrence,
then no act or omission of any other person could have been a proximate cause.”
The trial court refused to give the instruction. The trial court also overruled
F.F.P.’s objections that the jury charge omitted: (1) any question submitting
Ruiz’s negligence as a responsible third party; and (2) any comparative
responsibility question asking the jury to determine what percentage of
negligence causing the occurrence in question was attributable to Ruiz and what
percentage was attributable to F.F.P.

The
jury found, as required to impose dram-shop liability, that when the alcohol
was sold to Ruiz, it was “apparent to the seller that he was obviously
intoxicated to the extent that he presented a clear danger to himself and
others,” and that Ruiz’s intoxication was a proximate cause of the collision. See
Tex. Alco. Bev. Code §
2.02(b). The jury returned a $35 million verdict against F.F.P., upon which the
trial court rendered judgment. 

The
court of appeals affirmed the trial court’s judgment, holding:

 

[I]n third-party
actions under the Dram Shop Act in which there are no allegations of negligence
on the part of the plaintiffs, a provider is vicariously liable for the damages
caused by an intoxicated person, and such a provider is not entitled to offset
its liability by that of the intoxicated person.

 

69 S.W.3d at
805. In reaching that conclusion, the court distinguished our decision in Sewell,
858 S.W.2d at 356, in which we held that the comparative responsibility statute
applied to dram-shop causes of action. 69 S.W.3d at 805. The court of appeals
concluded that Sewell’s holding was limited to first-party actions, in
which the intoxicated patron is suing for his own injuries, and did not apply
when the plaintiff is an innocent third party injured by an intoxicated patron.
Id. The court also held that the trial court did not abuse its
discretion in severing F.F.P.’s cross-action against Ruiz, concluding that
F.F.P.’s statutory liability was vicarious and not direct so that any rights
F.F.P. had against Ruiz did not accrue until its own liability became fixed. Id.
at 807. Finally, the court rejected F.F.P.’s argument that the trial court
should have submitted an instruction on sole proximate cause. Id. at
808-09. We granted F.F.P.’s petition for review to consider Chapter 33’s
application and related issues.[3] [footnote 2 in original opinion]

II 

In
enacting the Dram Shop Act, the Legislature sought to “deter providers of
alcoholic beverages from serving alcoholic beverages to obviously intoxicated
individuals who may potentially inflict serious injury on themselves and on
innocent members of the general public.” Sewell, 858 S.W.2d at 356. A
plaintiff seeking to impose liability on a provider under the Act must shoulder
what we have called “an onerous burden of proof,” El Chico Corp. v. Poole,
732 S.W.2d 306, 314 (Tex. 1987), approaching the common-law gross negligence
standard. See Steak & Ale of Tex., Inc. v. Borneman, 62 S.W.3d 898,
909 (Tex. App.–Fort Worth 2001, no pet.). The Act requires a plaintiff to prove
that, when the alcohol was provided, the recipient “was obviously
intoxicated to the extent that he presented a clear danger to himself
and others,” and the recipient’s intoxication was a proximate cause of the
damages suffered. Tex. Alco. Bev. Code §
2.02(b) (emphasis added). If the plaintiff can meet this burden, the Act
nevertheless affords providers a relatively simple safe-harbor. Section
106.14(a)[4] [footnote 3 in original opinion]
shields a provider from liability for its employee’s actions if the provider
establishes that it required the employee to attend a training course approved
by the Texas Alcoholic Beverage Commission, the employee actually attended the
course, and the provider did not encourage the employee to violate the
Alcoholic Beverage Code. Act of May 21, 1987, 70th Leg., R.S., ch. 582, § 3,
1987 Tex. Gen. Laws 2298, 2299 (amended 2003) (current version at Tex. Alco. Bev. Code § 106.16(a)); see
D. Houston, Inc. v. Love, 92 S.W.3d 450, 453 (Tex. 2002). If the plaintiff
meets the burden of proof that the Dram Shop Act imposes, and the provider is
unable to establish a server-training defense, then the provider is liable “for
the actions of [its] customer[].” Act of June 1, 1987, 70th Leg., R.S., ch.
303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003) (current version at Tex. Alco. Bev. Code § 2.03).

Chapter
33 of the Texas Civil Practice and Remedies Code governs the apportionment of
responsibility and applies to “any cause of action based on tort in which a defendant,
settling person, or responsible third party is found responsible for a
percentage of the harm for which relief is sought.” Act of June 3, 1987, 70th
Leg., 1st C.S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 2003)
(current version at Tex. Civ. Prac.
& Rem. Code § 33.002). Section 33.003 provides that the trier of
fact shall apportion responsibility “with respect to each person’s causing or
contributing to cause in any way the harm for which recovery of damages is
sought.” Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, 1987 Tex.
Gen. Laws 37, 41 (amended 2003) (current version at Tex. Alco. Bev. Code § 33.003). Chapter 33 expressly excludes
certain types of cases from its coverage, such as workers’ compensation cases,
id. § 33.002(c)(1), but it does not exclude actions brought under the Dram
Shop Act. 

It
is clear from Chapter 33’s language that the Legislature intended all causes of
action based on tort, unless expressly excluded, to be subject to
apportionment. The statute was similarly plain when we decided in Sewell,
858 S.W.2d at 356, that Chapter 33 applied to claims brought under the Dram
Shop Act. When Sewell was decided, Chapter 33 provided that it applied
“[i]n an action to recover damages for negligence . . . or an action for
products liability grounded in negligence.” Act of June 3, 1987, 70th Leg., 1st
C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40 (amended 1995) (current version
at Tex. Civ. Prac. & Rem. Code
§ 33.001(a)). We concluded that the statute applied because the essential
elements of a dram-shop action replicated those of a negligence claim. Sewell,
858 S.W.2d at 355-56. Since Sewell, the Legislature has amended Chapter
33’s applicability provision to encompass “any cause of action based on tort.” Tex. Civ. Prac. & Rem. Code §
33.002. If anything, that change indicates the Legislature intended a broader
application, since the term would include non-negligent tortious conduct. 

The
court of appeals held that Sewell did not apply in cases like this one
because the Dram Shop Act imposes vicarious liability on F.F.P. for Ruiz’s
actions; thus, as between F.F.P. and the Dueñezes, there is nothing to
apportion. 69 S.W.3d at 806. The court noted that vicarious liability is
“problematic” in first-party suits because allowing an intoxicated patron to
impose vicarious liability on a provider without regard to the patron’s own
conduct would be “unpalatable.” Id. It was a desire to avoid this result, the
court of appeals reasoned, that fueled our Sewell analysis, as evidenced
by our statement that the decision was based on “the limited circumstances
present in this cause . . . .” Sewell, 858 S.W.2d at 356. 

It
is true, though hardly remarkable, that we based our holding in Sewell
on the facts presented, and those facts presented a first-party claim. But our
holding was more broadly stated: “[T]he Comparative Responsibility Act —
Chapter 33 of the Texas Civil Practice and Remedies Code — is applicable to
Chapter 2 [dram shop] causes of action.” Id. at 351 (emphasis
added). Nowhere did we create an exception for third-party claims. The
statute’s plain language leaves no doubt that Chapter 33 applies to all claims
brought under the Dram Shop Act. Moreover, the nature of the liability that the
Dram Shop Act imposes on a provider does not render the proportionate
responsibility statute meaningless, nor does Chapter 33’s application undermine
the Dram Shop Act’s effect. 

Causation
under the Dram Shop Act is tied to the patron’s intoxication rather than the
provider’s conduct. See Borneman v. Steak & Ale of Tex., Inc., 22
S.W.3d 411, 413 (Tex. 2000). Because the Act imposes liability on providers
“for the actions of their customers” regardless of whether the provider’s
conduct actually caused the injuries suffered, the court of appeals in this
case concluded that the provider’s liability is purely vicarious. 69 S.W.3d at
805-06. Under the court’s analysis, the provider and the intoxicated patron are
one and the same, like the employer and employee in a case founded upon the
doctrine of respondeat superior. Id. 

It
is true that, if a provider’s liability under the Dram Shop Act were purely
vicarious, as the court of appeals held, there would be nothing for the jury to
apportion between F.F.P. and the Dueñezes in this case. But the Act has a
direct liability component that the court of appeals wholly ignored. Unlike
true vicarious liability, in which one party’s actionable conduct is imputed to
another, a dram shop’s liability stems in part from its own wrongful conduct. See
Sewell, 858 S.W.2d at 355; Keeton et
al., Prosser & Keeton on Torts § 69, at 499 (5th ed. 1984). In order
to impose liability under the Act, the factfinder must conclude that the
provider made alcohol available to an obviously intoxicated patron whose
intoxication caused the plaintiff harm. Tex.
Alco. Bev. Code § 2.02(b). As we said in Sewell, “liability under
[the Dram Shop Act] is premised on the conduct of the provider of the alcoholic
beverages — not the conduct of the recipient or a third party.” 858 S.W.2d at
355. Accordingly, the dram shop’s liability is based on its own wrongful or
dangerous conduct even though the statutorily required causal link focuses on
the patron’s intoxication. Tex. Alco.
Bev. Code § 2.02(b). 

That
a provider’s liability under the Dram Shop Act has a derivative component does
not make it antithetical to proportionate responsibility. Under Chapter 33, the
trier of fact must apportion the percentage of responsibility attributable to
each of the persons who “caus[ed] or contribut[ed] to cause in any way” the
harm suffered. Tex. Civ. Prac. &
Rem. Code § 33.003. Although the Act ties causation to the intoxicated
patron’s actions, certainly dram-shop liability was fashioned on the notion
that providing alcohol to one who is obviously intoxicated to the extent that
the public is clearly endangered “contributes [in some] way” to harm that the
intoxication causes. Id.; see Sewell, 858 S.W.2d at 356. 

The
Dueñezes contend that allowing F.F.P. to avoid its statutory liability by
shifting responsibility onto its intoxicated customer will undermine the
legislative policy choice to deter the sale of alcohol to obviously intoxicated
persons and the Legislature’s “recogni[tion] that providers of alcoholic
beverages owe a duty to those who may be injured due to the consumption of
those alcoholic beverages.” Sewell, 858 S.W.2d at 354. We agree that the
Legislature did not intend for an innocent third party to bear the risk of an
intoxicated patron’s insolvency when a provider has breached the duty that the
Act imposes. But applying Chapter 33 to a dram-shop liability scheme that
partially imputes causation does not thwart the Legislature’s purpose. As one
commentator has noted:

 

Comparative
negligence, in and of itself, has not changed these basic principles [of imputed
negligence]. When negligence is apportioned in the presence of vicarious
liability, the master bears the burden of his servant’s negligence. If the
master has been partially at fault, the percentage of negligence attributed to
the servant is added to the percentage attributed to the master.

 

Schwartz, Comparative Negligence § 16.1
(2d ed. 1986) (emphasis added) (citations omitted). Thus, while the dram shop
is entitled to seek recovery from an intoxicated patron to the extent causation
is imputed, rather than direct, the dram shop is liable to injured third
parties for both its own actions and for its patron’s share of responsibility. 

This
construct comports with the rule stated in section 13 of the Restatement of
Apportionment of Liability that “[a] person whose liability is imputed based on
the tortious acts of another is liable for the entire share of comparative
responsibility assigned to the other . . . .” Restatement
(Third) of Torts: Apportionment of Liability § 13 (2000). While section
13 refers to the situation in which a party is held vicariously liable solely
on the basis of another’s conduct, the Restatement makes clear that a party to
whom liability is imputed and who is also independently liable “is responsible
for the share of the verdict assigned to [the party whose liability is imputed]
and is also responsible for the share of the verdict assigned to its own
negligence.” Id. § 7 cmt. j (2000). 

We
conclude that, when the factfinder determines that a provider has violated the
Dram Shop Act and its patron’s intoxication has caused a third party harm,
responsibility must be apportioned between the dram shop and the intoxicated
patron, as well as the injured third party if there is evidence of contributory
negligence. The resulting judgment should aggregate the dram shop’s and
driver’s liability so that the plaintiff fully recovers from the provider
without assuming the risk of the driver’s insolvency. The dram shop may then
recover from the driver based upon the percentages of responsibility that the
jury assessed between them. 

In
reaching this conclusion, we pay heed to the principle that courts should, if
possible, construe statutes to harmonize with each other. La Sara Grain Co.
v. First Nat’l Bank of Mercedes, 673 S.W.2d 558, 565 (Tex. 1984) (citing State
v. Standard Oil Co., 107 S.W.2d 550 (Tex. 1937)). In enacting the Dram Shop
Act, the Legislature sought to protect innocent members of the public from the
dangers intoxicated individuals pose by placing some responsibility for injury
on those who sell alcoholic beverages. Sewell, 858 S.W.2d at 356. That
is why the Act speaks in terms of “[t]he liability of providers under this
chapter for the actions of their customers, members, or guests who are or
become intoxicated . . . .” Tex. Alco. Bev.
Code § 2.03. As the Iowa Supreme Court has postulated, juries in dram
shop cases are likely to assign most, if not all, of the responsibility for
third parties’ injuries to the intoxicated patron. See Slager v. HWA Corp.,
435 N.W.2d 349, 357 (Iowa 1989). If the provider who serves a clearly
intoxicated patron does not bear responsibility for injuries caused by the
patron’s intoxication, the remedy the Legislature provided in the Dram Shop Act
would be meaningless, at least to the extent the intoxicated patron proves to
be insolvent, hardly a result that the Legislature likely contemplated in
substituting dram-shop liability for otherwise available common-law remedies.
          

Moreover,
the Legislature has directed that, in construing statutes, we must consider the
object sought to be obtained and the consequences of a particular construction.
Code ConStruction Act, Tex. Gov’t Code §§ 311.023(1), (5); see
Tex. Alco. Bev. Code § 1.02
(expressly incorporating the Code Construction Act). The Legislature has
further instructed courts to liberally construe the Alcoholic Beverage Code so
that the safety and welfare of our citizens are protected. Tex. Alco. Bev. Code § 1.03. Rather
than undermine the Legislature’s purpose in enacting the Dram Shop Act, we give
effect to both it and the Proportionate Responsibility Act.

In
contrast, the dissent gives no weight to section 2.03(a) of the Dram Shop Act,
concluding it “means only that a cause of action for damages caused by an intoxicated
patron is the exclusive remedy against an alcohol provider.” (Owen, J., dissenting). But if that had
been the statutory purpose, section 2.03(a) would have simply said:

 

The liability of
providers under this chapter is in lieu of common law or other statutory law
warranties and duties of providers of alcoholic beverages.

           


Instead,
subsection (a) clearly says:

 

[t]he liability of
providers under this chapter for the actions of their employees, customers,
members, or guests who are or become intoxicated is in lieu of common law
or other statutory law warranties and duties of providers of alcoholic
beverages. 

 

Tex. Alco. Bev. Code § 2.03(a)
(emphasis added). The dissent’s construction of the statute violates the
fundamental rule that we are to give effect to “every sentence, clause, and
word of a statute so that no part thereof [will] be rendered superfluous.” City
of San Antonio v. City of Boerne, 111 S.W.3d 22, 29 (Tex. 2003) (quoting Spence
v. Fenchler, 180 S.W. 597, 601 (1915)).

Finally,
the dissent’s discussion of the Legislature’s imposition of strict liability on
illegal methamphetamine manufacturers and other criminal actors improperly
presumes that we are similarly exempting alcohol providers from the
proportionate responsibility scheme. Clearly we are not. Instead, we apply that
scheme consistent with the Dram Shop Act’s language and purpose. Our
interpretation gives effect to both the Dram Shop Act’s express language and
the statutory proportionate responsibility scheme. Even the dissent
acknowledges that our decision “may express sound public policy.” (Owen, J., dissenting). That is exactly
the public policy we believe the Legislature chose when it crafted section
2.03(a).

We
conclude that the court of appeals erred in holding that the proportionate
responsibility statute does not apply to third-party actions under the Dram
Shop Act. The judgment is correct, though, because F.F.P. is responsible to the
Dueñezes for its own liability and that of Ruiz, from whom F.F.P. may recover
to the extent of his imputed liability. We must now decide whether the trial
court erred in severing F.F.P.’s claim against Ruiz.

III

The
trial court severed F.F.P.’s claim against Ruiz and proceeded to trial with
F.F.P. as the only defendant. The court of appeals affirmed the trial court’s
severance order, concluding that a vicariously liable party’s right of recovery
against a tortfeasor is through indemnity, which does not become actionable
until an adverse judgment is taken. 69 S.W.3d at 807-08. Because the court
considered F.F.P.’s liability vicarious in nature, it also held that Ruiz did
not meet Chapter 33’s definition of a responsible third party for apportionment
purposes. Id. 

As
already explained, F.F.P.’s dram-shop liability is not purely vicarious;
therefore the trial court should have submitted Ruiz’s percentage of
responsibility to the jury for apportionment under Chapter 33. But because
F.F.P. is responsible to the Dueñezes for its own percentage of liability and
that of Ruiz, and because there is nothing that would prevent a jury from
fairly apportioning responsibility between F.F.P. and Ruiz in the severed
action, the trial court’s severance order did not constitute reversible error. 

IV 

Finally,
F.F.P. contends the trial court erred in refusing to instruct the jury on sole
proximate cause. F.F.P. bases its claimed entitlement to that instruction on
evidence that Ruiz was reaching under the seat for a compact disc when the
accident occurred, and it was this inattention rather than Ruiz’s intoxication
that caused the accident. The Dueñezes respond that the instruction F.F.P.
requested did not preserve this argument. We agree. 

F.F.P.’s
requested instruction stated: “if an act or omission of any person not a party
to the suit was the ‘sole proximate cause’ of an occurrence, then no act or
omission of any other person could have been a proximate cause.” The proposed
submission merely instructs that if a non-party’s action was the sole proximate
cause of the Dueñezes’ injury, then no other person’s action could be a
proximate cause. The instruction thus asks the jury to compare the actions of
two different people rather than distinguish between the same person’s
intoxication and inattention. The requested instruction would not have focused
the jury’s attention on the act that F.F.P. contends was the sole proximate
cause of the Dueñezes’ injuries; thus, the trial court did not err in refusing
to submit it. See Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 665-66
(Tex. 2002) . 

V

For
the foregoing reasons, the court of appeals’ judgment is affirmed. 

 

 

__________________________________________

Harriet O’Neill

Justice

 

 

OPINION DELIVERED: September 3,
2004

 

 

 

 














[1] The Dram Shop Act has since been amended in a manner
that does not affect my analysis. All citations in this dissent refer to the
version applicable to the present case. Act of June 1, 1987, 70th Leg., R.S.,
ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003) (current version at
Tex. Alco. Bev. Code § 2.03). 





[2] There was conflicting testimony about whether Ruiz actually drank any
of the beer that he purchased at Mr. Cut Rate. 

 





[3] In addition to briefing from the parties, we received
briefs from several amici, including the Saltgrass Steakhouse Private Club,
Inc., Waco Texas Management, Inc., on behalf of Cactus Canyon, Texas Restaurant
Association, Texas Petroleum Marketers and Convenience Store Association, and
Mothers Against Drunk Driving.





[4] Although this provision has since been amended, in
this opinion, we refer to the version of the statute that governs these
proceedings. We treat other code provisions that have been amended similarly.